**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BEBE WHITE[1] et al.,**

            **Plaintiffs,**

            v.

**GLOBAL COMPANIES, LLC,**

            **Defendant.**

**1:16-cv-125
(GLS/CFH)**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Earthjustice, Inc. | CHRISTOPHER A. AMATO, ESQ. |
| 48 Wall Street, 19th Floor | |
| New York, NY 10005 | JONATHAN J. SMITH, ESQ. |
| | MONEEN S. NASMITH, ESQ. |
| **FOR THE DEFENDANT:** | |
| Young, Sommer Law Firm | DEAN S. SOMMER, ESQ. |
| Executive Woods | JOSEPH F. CASTIGLIONE, ESQ. |
| Five Palisades Drive | |
| Albany, NY 12205 | JEFFREY S. BAKER, ESQ. |

**Gary L. Sharpe
Senior District Judge**

---

[1] Plaintiffs filed a motion to substitute Bebe White for Charlene Benton pursuant to Rule 25(a) of the Federal Rules of Civil Procedure. (Dkt. No. 34.) The deadline for a response passed, and defendant Global Companies, LLC did not oppose the motion. The court hereby grants the motion, and the Clerk is directed to amend the case caption accordingly.

## **MEMORANDUM-DECISION AND ORDER**

## **I. Introduction**

Plaintiffs Bebe White, president, on behalf of the Ezra Prentice Homes Tenants Association, the County of Albany, Sierra Club, Center for Biological Diversity, Riverkeeper, Inc., Scenic Hudson, Natural Resources Defense Council, and Catskill Mountainkeeper commenced this citizen enforcement action for declaratory relief, injunctive relief, and civil penalties against defendant Global Companies, LLC (Global), alleging violations of the Clean Air Act[2] (CAA) and New York's state implementation plan[3] (SIP). (Compl., Dkt. No. 1.) Pending is Global's motion to dismiss brought pursuant to Rules 12(b)(1) and 12(b)(6). (Dkt. No. 12).

In sum, plaintiffs claim that, in addition to Global's Title V permit (hereinafter "permit") issued by the New York State Department of Environmental Conservation (DEC), Global is required to have a

---

[2] 42 U.S.C. §§ 7401-7671q.

[3] Under the CAA, "[s]tates have primary responsibility for implementing [national ambient air quality standards formulated by the EPA]." *Utility Air Regulatory Grp. v. EPA*, 134 S.Ct. 2427, 2435 (2014). "Each state must develop, subject to EPA approval, a [s]tate [i]mplementation [p]lan . . . to implement, maintain, and enforce" those standards. *Coal. Against Columbus Ctr. v. City of New York*, 967 F.2d 764, 766-67 (2d Cir. 1992).

nonattainment new source review (NNSR) permit for its petroleum facility. (*See generally* Compl.) Global argues that its permit includes specific provisions that obviate the need for an NNSR permit and that plaintiffs' claims are barred by 42 U.S.C. § 7607 because they failed to object to the U.S. Environmental Protection Agency's (EPA) approval of Global's permit. (Dkt. No. 12, Attach. 1 at 10-16.) Plaintiffs also claim that Global is violating an emission limitation in its permit, (Compl. ¶¶ 84-88), to which Global counters that the permit contains no such limitation, (Dkt. No. 12, Attach. 1 at 17-18). For the reasons below, the court grants Global's motion.

## II. Background

**A.** **Facts**[4]

*1. Global's Terminal; Clean Air Act Requirements*

Global owns and operates the Albany Terminal (hereinafter "Terminal"), a "petroleum product transloading facility" in Albany, New York "where petroleum products are received by rail, stored in tanks, and

---

[4] Under Rule 12(b)(6), the facts are drawn from plaintiffs' complaint and presented in the light most favorable to them. However, under Rule 12(b)(1), the court "need not accept as true contested jurisdictional allegations and may resolve disputed jurisdictional facts by reference to affidavits and other materials outside the pleadings." *Groves v. Comm'r of Soc. Sec.*, No. 7:12-cv-904, 2014 WL 5475292, at *2 (N.D.N.Y. Oct. 29, 2014) (internal quotation marks and citation omitted).

then transloaded to barges for transport down the Hudson River." (Compl. ¶¶ 1, 27, 45.) The offloading, storage, handling, and transloading of petroleum products at the Terminal results in emissions of volatile organic compounds (VOCs) that "react with other compounds to form . . . ozone, which can cause severe respiratory problems, adverse cardiovascular effects, and premature death." (*Id.* ¶¶ 2, 50.) Ozone is a regulated pollutant under the CAA, and the EPA has promulgated national ambient air quality standards (NAAQS) for ozone. (*Id.* ¶ 2.) The Terminal is located in an area designated by the DEC and the EPA as "nonattainment" for ozone, meaning its air quality does not meet the NAAQS for ozone. (*Id.* ¶ 3.)

To ensure that sources of air pollution in a nonattainment area do not "exacerbate existing air quality problems or delay achievement of the NAAQS, the CAA imposes additional permitting requirements on . . . modified sources that contribute significant amounts of a pollutant for which the area is in nonattainment." (*Id.* ¶ 5.) These additional permitting requirements are set forth in the NNSR provisions of the CAA. (*Id.* (citing 42 U.S.C. §§ 7501-15).)

Because Global's Terminal is in an ozone nonattainment area and is

4

considered a "major source," NNSR requirements[5] apply if and when the Terminal undergoes a "major modification." (*Id.* ¶¶ 2, 3, 36.) A major modification occurs if a net increase in the Terminal's potential to emit VOCs increases by forty tons per year (tpy) or more. (*Id.* ¶ 36 (citing 40 C.F.R. § 51.165).) Furthermore, as a "major source," the Terminal is required by the CAA to have a permit. (*Id.* ¶¶ 2, 40 (citing 42 U.S.C. § 7661a).)

### 2. *Global's Application to Modify its Permit*

On or about November 14, 2011, Global submitted to the DEC an application to modify its permit "to accommodate a fivefold increase in the marine throughput of petroleum products at the . . . Terminal, from 450 million gallons annually to 2.3 billion gallons annually." (*Id.* ¶ 54.) The DEC informed Global that the requested permit modification constituted a major modification. (*Id.* ¶ 55.) Accordingly, "conditions designed to keep VOC emission increases below the 40 tpy threshold . . . [to] avoid the need for a [separate] NNSR permit" were added to the permit. (Dkt. No.

---

[5] NNSR requirements include "obtain[ing] emission offsets" and "implement[ing] control technology that meets the [l]owest [a]chievable [e]mission [r]ate ('LAER')" for ozone. (Compl. ¶ 6 (citing 42 U.S.C. § 7503; N.Y. Comp. Codes R. & Regs. tit. 6, § 231-6).)

12, Attach. 1 at 3; Dkt. No. 12, Attach. 3 at 8[6]; Dkt. No. 12, Attach. 5 at 5.[7]) Adding federally-enforceable conditions to a permit in order to avoid the need for a separate NNSR permit is authorized by New York state regulations. *See* N.Y. Comp. Codes R. & Regs. tit. 6, §§ 201-1.1(b),[8] 201-7.[9]

As part of the application process, the DEC published notice of the proposed modification to Global's permit and provided for a thirty-day public comment period. (Dkt. No. 12, Attachs. 4, 6.) The DEC made available a permit review report summarizing Global's proposed permit and identifying the applicable regulatory requirements. (Dkt. No. 12, Attach. 5.) Following the public comment period, the proposed permit was

---

[6] This document is a draft of Global's modified permit and contains "Federally Enforceable Conditions," including N.Y. Comp. Codes R. & Regs. tit. 6, § 201-7.

[7] This document is a DEC "Permit Review Report" and states that non-attainment (including NNSR) regulations do not apply to Global's permit modification application. (Dkt. No. 12, Attach. 5 at 5).

[8] "Owners and/or operators of emission sources subject to applicable requirements . . . may request limitations on such source's potential to emit regulated air pollutants in accordance with [§] 201-7 . . . in order to avoid such requirements." N.Y. Comp. Codes R. & Regs. tit. 6, § 201-1.1(b). The court notes that citations to § 201 refer to the version that was in effect at the time of Global's application, which is not in dispute. (Dkt. No. 16 at 13 n.9.)

[9] "A source owner or operator may elect to accept federally enforceable permit terms and conditions which restrict or cap emissions from a stationary source . . . in order to avoid being subject to one or more applicable requirements that the source . . . would otherwise be subject to[.]" N.Y. Comp. Codes R. & Regs. tit. 6, § 201-7.1.

6

transmitted to the EPA for review. (Dkt. No. 12, Attach. 7.) No comments were submitted on the draft permit during the public comment period, and no one petitioned the EPA to object to the proposed permit.[10] (Dkt. No. 12, Attach. 1 at 4.)

On or about November 7, 2012, the DEC issued Global the modified permit. (Compl. ¶ 63.) After receiving the modified permit, Global accordingly modified the Terminal, including reconfiguring a rail yard, constructing pumps and piping, and installing a vapor recovery unit. (*Id.* ¶ 64.) Although this modification resulted in a net increase in the Terminal's potential to emit forty tpy or more of VOCs, (*id.* ¶ 66), Global did not apply for an NNSR permit, (*id.* ¶ 67).

3.   *Global's Permit Requirements*

According to plaintiffs, Global's representations in its application to the DEC "that [the Terminal] would handle conventional crude oil with an emission factor no greater than 1.3590 pounds of VOCs per 1,000 gallons

---

[10] To the extent that plaintiffs allege that "Global failed to comply with the enhanced public notice and public participation requirements of [DEC Commissioner Policy 29]" and thus certain plaintiffs "were deprived of the opportunity to . . . provide comments," (Compl. ¶¶ 4, 56-60), plaintiffs did not respond to Global's argument in its motion to dismiss that the policy is "not a regulation and is not enforceable by its own terms," (Dkt. No. 12, Attach. 1 at 15 n.5). In any event, the issue is of no moment, as plaintiffs do not argue that they did not receive sufficient notice of the EPA's review of the proposed permit.

7

handled during marine loading" are enforceable terms and conditions incorporated in Global's permit. (*Id.* ¶ 72.) Because Global has "routinely received, stored, handled, and marine loaded Bakken crude oil," which has an emission factor greater than that, plaintiffs allege that Global is in violation of the CAA and New York's SIP. (*Id.* ¶¶ 74, 88.)

### 4. Plaintiffs

Plaintiff Ezra Prentice Homes Tenants Association represents the interests of the tenants of Ezra Prentice, a public housing development home to over four hundred residents, including more than two hundred children. (*Id.* ¶ 17.) Ezra Prentice is "located directly adjacent" to the Terminal. (*Id.* ¶¶ 17, 48.) The remaining plaintiffs are the County of Albany and various environmental groups with interests in the region allegedly affected by the Terminal's emissions. (*Id.* ¶¶ 18-26.)

## B. Procedural History

Plaintiffs filed the instant action in February 2016. (*See generally* Compl.) Plaintiffs assert the following claims against Global: (1) "Defendant failed to apply for and obtain an NNSR permit prior to commencing construction of the [m]ajor [m]odification to the . . . Terminal in violation of the CAA and New York's SIP," (*id.* ¶ 79); (2) "Defendant's

8

operation of the . . . Terminal without implementing LAER for VOCs and without obtaining VOC emission offsets violates the CAA and New York's SIP," (*id.* ¶ 83); and (3) "Defendant's past and continuing receipt, storage, handling, and marine loading of Bakken crude oil with a VOC emission factor exceeding 1.3590 pounds per 1,000 gallons constitutes a violation of an emission standard or limitation under the CAA and New York's SIP," (*id.* ¶ 88).

Accordingly, plaintiffs request a declaratory judgment, injunctive relief, "civil penalties of $37,500 per day for each day [Global] has operated the . . . Terminal in violation of the CAA and/or New York's SIP, and allocating an appropriate portion of the penalty amount to be used for beneficial mitigation projects to enhance public health and the environment pursuant to 42 U.S.C. § 7604(g)(2)," and "reasonable attorneys' and expert witness fees and costs." (*Id.* at 21.)

Global filed the pending motion to dismiss, which seeks to dismiss plaintiffs' first two claims for lack of subject matter jurisdiction and plaintiffs' third claim for failure to state a claim upon which relief can be

9

granted.[11] (Dkt. No. 12.)

### III. Standard of Review

On a Rule 12(b)(1) motion, "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "[Plaintiffs] must allege a proper basis for jurisdiction in [their] pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations[.]" *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion

---

[11] Alternatively, Global seeks to dismiss plaintiffs' third claim for lack of subject matter jurisdiction. (Dkt. No. 12 at 19.)

## A. Global's 12(b)(1) Motion

Plaintiffs bring the instant lawsuit under 42 U.S.C. § 7604, the citizen enforcement provision of the CAA. (Compl. ¶ 1.) Specifically, plaintiffs' first claim that Global lacks an NNSR permit is brought under § 7604(a)(3), which provides that "any person may commence a civil action on his own behalf . . . against any person who . . . constructs any new or modified major emitting facility without a permit required under . . . part D of subchapter I of this chapter (relating to nonattainment)[.]"

Global's argument is that another provision of the CAA, 42 U.S.C. § 7607, bars the first two claims. (Dkt. No. 12, Attach. 1 at 10-17.) That provision states that "[a]ction of the [EPA] Administrator with respect to which review could have been obtained . . . shall not be subject to judicial review in civil or criminal proceedings for enforcement." 42 U.S.C. § 7607(b)(2). Because plaintiffs failed to petition the EPA Administrator to object to the issuance of Global's modified permit[12]—which contains conditions that allowed Global to avoid the necessity of an NNSR permit—Global argues that the statutory bar divests this court of subject

---

[12] "Any denial of such petition [is] subject to judicial review under section 7607[.]" 42 U.S.C. § 7661d(b). The United States Court of Appeals is the exclusive forum for such judicial review. See 42 U.S.C. § 7607(b)(1).

11

matter jurisdiction.  (Dkt. No. 12, Attach. 1 at 7, 11-12.)

Plaintiffs argue that they "do not challenge specific terms" of Global's permit but rather "contend that Global failed to apply for and obtain the required NNSR permit."  (Dkt. No. 16 at 8.)  Plaintiffs rely on *Weiler v. Chatham Forest Products, Inc.*, 392 F.3d 532 (2d Cir. 2004), a case in which the Second Circuit reversed a district court's dismissal of a citizen suit that alleged that, contrary to the DEC's determination that a certain permit was not necessary, a facility owner needed that permit.  (Dkt. No. 16 at 6-9.)  Plaintiffs also argue that the case law cited by Global is distinguishable and, in any event, contrary to Second Circuit law and wrongly decided.  (*Id.* at 11-15.)

The court agrees with Global that 42 U.S.C. § 7607(b)(2) bars plaintiffs' first two claims.  Although *Weiler* is seemingly analogous, the fact that there was no EPA review in that case is a decisive distinction.  *See Weiler*, 392 F.3d at 537 (noting that the "[EPA] *may* take action" with regard to the facility at issue in the case (emphasis added)).  The claim in *Weiler* was not barred by § 7607(b)(2) because, unlike here, there was no action by the EPA "with respect to which review could have been

12

obtained."[13] § 7607(b)(2). Indeed, *Weiler* noted that "[i]f Congress intended to foreclose citizen suits . . . it could have said so." 392 F.3d at 539. In the context of § 7607(b)(2), Congress has said so, as other jurisdictions have recognized. *See Nw. Envtl. Def. Ctr. v. Cascade Kelly Holdings LLC*, 155 F. Supp. 3d 1100, 1120-22 (D. Or. 2015) (surveying case law).

Here, if plaintiffs disagreed with the EPA's determination that an NNSR permit was unnecessary in light of conditions put into the modified permit,[14] plaintiffs needed to petition the EPA to object to the issuance of the permit.[15] *See* 42 U.S.C. § 7661d(b)(2). If the EPA declined to object, plaintiffs needed to seek judicial review in the Second Circuit Court of Appeals. *See* 42 U.S.C. § 7607(b)(1). Having failed to do that, plaintiffs

---

[13] *New York v. Niagara Mohawk Power Corp.*, 263 F. Supp. 2d 650 (W.D.N.Y. 2003), the other case in the Second Circuit cited by plaintiffs, (Dkt. No. 16 at 9-10), is inapposite for the same reason. Although the defendant in that case had a Title V permit, unlike here, the requirements at issue were not addressed in that permit nor reviewed and approved by the EPA. *See Niagara Mohawk*, 263 F. Supp. 2d at 662 n.21.

[14] Plaintiffs argue that "New York has not integrated its Title V and NNSR provisions," in an attempt to distinguish the instant case from cases in other jurisdictions in which § 7607(b)(2) has been applied. (Dkt. No. 16 at 12-13.) Global argues that they are integrated. (Dkt. No. 18 at 3-4.) Whether integrated or not, what matters is that New York authorizes the addition of federally-enforceable conditions to a Title V permit in order to avoid the need for an NNSR permit. *See supra* notes 8 and 9 and accompanying text.

[15] Plaintiffs also failed to comment during the DEC's public comment period. (Dkt. No. 12, Attach. 1 at 3-4); *see supra* note 10 and accompanying text.

13

are now foreclosed by § 7607(b)(2) from challenging the determination that an NNSR permit is not required—a determination that the EPA necessarily made, at least implicitly, when it did not object to the issuance of Global's modified permit that included conditions to avoid the need for an NNSR permit.

Plaintiffs fail to offer a valid reason why § 7607(b)(2) should not apply in this case. To the extent that "Global's representation to [the] []DEC and [the] EPA that it was not subject to NNSR requirements was based on [an] erroneous . . . calculation," (Dkt. No. 16 at 4), plaintiffs received notice regarding the DEC review and the EPA review but failed to take action, (Dkt. No. 12, Attach. 1 at 4). And, if the fact that Global is "handling a more volatile type of crude oil than claimed in its application," (Dkt. No. 16 at 4 n.1), violates the conditions in Global's modified permit, then plaintiffs can bring an action to enforce those conditions. But plaintiffs' first claim amounts to an allegation that the modified permit's conditions should be stricter, which is an argument that plaintiffs needed to raise during the EPA review process to avoid the § 7607(b)(2) bar.

The court is mindful of plaintiffs' argument that § 7607(b)(2) would seemingly bar an enforcement action by the EPA itself. (Dkt. No. 30 at 2.)

14

But that is not before the court. And, even assuming that the EPA would be barred, plaintiffs, the DEC, and the EPA have options to address perceived problems with Global's modified permit. Indeed, plaintiffs wrote to the DEC to request it to "conduct a full environmental justice analysis for [Global's] . . . permit renewal[]" and "urge[d] the D[EC] to ensure that any renewal of Global's . . . permit expressly incorporate" certain calculations and assumptions. (Dkt. No. 18, Attach. 2 at 2, 3.) Moreover, there are a number of bases for the EPA and/or the DEC to revise, suspend, or revoke Global's permit, such as if materially false or inaccurate statements were made in the permit application. *See* 40 C.F.R. § 70.7(f); N.Y. Comp. Codes R. & Regs. tit. 6, § 621.13.

Application of the § 7607(b)(2) bar in this context also makes sense in light of the consequences that would otherwise follow. Allowing a direct permit challenge in a court of appeals under § 7607(b)(1) and a separate CAA citizen suit under § 7604 would waste judicial resources and could also result in inconsistent decisions. *See United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 299 (3d Cir. 2013). Moreover, "allow[ing] plaintiffs to raise issues resolved during the permitting process long after that process is complete would upset the reasonable

15

expectations of [Global] and undermine the significant investment of regulatory resources made by [the DEC]." *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1022 (8th Cir. 2010).

Plaintiffs have thus failed to meet their burden of establishing subject matter jurisdiction, and their first two claims are dismissed.[16]

**B.     Global's 12(b)(6) Motion**

Plaintiffs' third cause of action alleges that Global's "[p]ermit contains a federally-enforceable throughput limitation under which the . . . Terminal may not receive, store, handle, or marine load crude oil with an emission factor that exceeds 1.3590 pounds of VOCs per 1,000 gallons handled during marine loading," (Compl. ¶ 85), and that Global's past and continuing activities with Bakken crude oil, which "generally has an emission factor greater than [that]," constitutes a violation of the CAA and New York's SIP, (*id.* ¶¶ 86-88). Plaintiffs allege that this limitation is enforceable because Global's representations to the DEC during the

---

[16] Plaintiffs' first claim is dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Because plaintiffs' second claim is technically brought under 42 U.S.C. § 7604(a)(1) and alleges that Global violated the requirements that an NNSR permit would impose, (Dkt. No. 16 at 5), it is not necessarily a collateral attack on Global's modified permit that is barred by § 7607(b)(2). However, in dismissing plaintiffs' first claim that Global needs an NNSR permit, plaintiffs have no basis for their second claim that Global must meet the requirements of such an NNSR permit. Thus, whether under Rule 12(b)(1) or 12(b)(6), plaintiffs' second claim is dismissed.

application process are incorporated in the permit as terms and conditions. (*Id.* ¶ 72.)

Global argues that this claim should be dismissed under Rule 12(b)(6) for two reasons.[17] First, the permit does not contain the alleged limitation, (Dkt. No. 12, Attach. 1 at 17-18; Dkt. No. 18 at 6-8), and, second, even if the limitation is in the permit, plaintiffs have not provided enough specific factual content to support their claim, (Dkt. No. 12, Attach. 1 at 20-21; Dkt. No. 18 at 8-10).

Plaintiffs have failed to sufficiently allege that Global's permit contains the limitation at issue. Their allegation that Global's permit "incorporates . . . representations [made by Global to the DEC during the application process] and includes them as terms and conditions," (Compl. ¶ 72), is a legal conclusion devoid of support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' complaint is silent as to how or why such representations are incorporated in the permit. *See Jackson v. Williams*, No. 8:16-CV-1137, 2017 WL 1162196, at *3 (N.D.N.Y. Mar. 28, 2017)

---

[17] Global also moves under Rule 12(b)(1) to dismiss plaintiffs' third claim. (Dkt. No. 12, Attach. 1 at 19.) The court rejects this argument because plaintiffs' third claim is not that Global's permit is deficient. Plaintiffs allege that a certain enforceable limitation is in the permit and that Global violated it. (Compl. ¶ 20.) The court thus has subject matter jurisdiction over plaintiffs' third claim. *See* 42 U.S.C. § 7604(a)(1).

("Merely stating legal conclusions is insufficient to state a cognizable claim for relief.") (internal quotation marks and citation omitted.) That is, an emission factor limitation cannot be read into Global's permit simply because, in a pleading and without more, plaintiffs say that it should. *Cf. Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 334 (S.D.N.Y. 2003).

In their opposition to Global's motion to dismiss, the only permit language that plaintiffs point to is Item 4-1.7: "Emissions for this cap were calculated using the most current AP-42 emission factors, 'TANKS' program, or other current emission factors." (Dkt. No. 12, Attach. 8 at 31; Dkt. No. 16 at 18.) It is unclear from the complaint—which neither cites this language nor attaches the permit—how this constitutes an enforceable limitation "under which the . . . Terminal may not . . . marine load crude oil with an emission factor that exceeds 1.3590 pounds of VOCs per 1,000 gallons handled." (Compl. ¶ 85.)

Indeed, in their opposition, plaintiffs fail to demonstrate the existence of such a limitation in Global's permit. The case cited by plaintiffs, *Sierra Club v. Energy Future Holdings, Corporation*, No. 5:10-cv-156-MHS-CMC, 2013 WL 5354414, at *12 (E.D. Tex. Sept. 24, 2013), is readily distinguishable because Texas' SIP specifically provides that

18

certain application representations constitute conditions upon which a permit is issued. Plaintiffs offer nothing to show that New York's SIP provides as such.

Moreover, the gravamen of plaintiffs' opposition to the dismissal of their third claim relies on a notice of intent that they sent Global.[18] (Dkt. No. 16 at 17-20.) But the court is unable to consider the notice of intent because plaintiffs' complaint did not attach it nor rely heavily on its terms or effect, and the notice is not integral to the complaint. *See Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995).[19] And even if the court could consider the notice of intent, it still fails to demonstrate that the alleged limitation should be read into Global's permit. Because plaintiffs do not allege—other than in a conclusory fashion—that there is an emission factor limitation in Global's permit, nor offer any legal reason why the permit should otherwise be enforceable, their third claim fails.

---

[18] As required by the CAA, plaintiffs provided a notice of intent to Global (copies of which were sent to the EPA and the DEC, among others), which constituted written notification of alleged violations and plaintiffs' intent to commence the instant suit if those alleged violations were not cured within sixty days. (Compl. ¶ 16 (citing 42 U.S.C. § 7604(b)(1)(A)).)

[19] The complaint only references the notice of intent once, to show that plaintiffs met the notice requirement for bringing a citizen suit. (Compl. ¶ 16.) *See supra* note 18.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion to substitute party (Dkt. No. 34) is **GRANTED**; and it is further

**ORDERED** that Global's motion to dismiss (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that plaintiffs' complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 26, 2017
Albany, New York

*Gary L. Sharpe*
Gary D. Sharpe
U.S. District Judge